IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CONNIE J. MALLON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 04-3132-CV-W-HFS |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**I.    Procedural Background**

On October 29, 2001, plaintiff applied for social security disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 64), and on October 25, 2001, plaintiff applied for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. (Tr. 517). In her application for disability benefits, plaintiff alleged a disability onset date of June 30, 2000; while in her application for supplemental security income, she alleged a disability onset date of April 20, 1998.[1] Plaintiff's applications were denied (Tr. 49-54), and plaintiff requested a hearing.

A hearing was held on December 18, 2002, and the Administrative Law Judge ("ALJ") determined that plaintiff suffered from severe impairments including osteoarthritis in her head; fibromyalgia; chronic obstructive pulmonary disease; a thyroid problem (minimally limiting); and

---

[1] In her decision, the Administrative Law Judge used the June 30th date, which will be accepted in this court's review of the decision.

sleep apnea. (Tr. 22). However, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform past relevant work.(Tr. 25).

For the reasons set forth herein, the decision of the ALJ is reversed.

## II.     Factual Background

The facts as set forth in the parties' briefs are thoroughly presented, and will be merely summarized here.

Plaintiff's Testimony

When questioned by the ALJ, plaintiff testified that she was 56 years of age, divorced, stood 5'6" and weighed 230 pounds. (Tr. 531-32). Plaintiff explained that she gained 30 to 40 pounds in the last 3 years due to being sick, and unable to exercise. (Tr. 532). Plaintiff is a college graduate. (Id). Plaintiff previously worked as a social worker, but her last job was in June of 2000, when she worked as a telemarketer. (Tr. 533). When plaintiff is not feeling sick she is able to cook, drive, wash dishes, dust, and use her computer; her daughter cleans the bathroom, vacuums, and sweeps and mops the floor. (Tr. 534-35). The pain medicine makes her feel terrible, and exercising does not always relieve the pain. (Tr. 535, 537).

After herniating two disks in her neck, plaintiff no longer enjoys reading; she also no longer mows her yard, gardens, or paints. (Tr. 535-36). Plaintiff estimated that she could lift five pounds, could sit or stand for thirty minutes, and could walk a block. (Tr. 537-38). During an eight hour period during the day, plaintiff lies down three to four times, for one to two hours each time. (Tr. 538-39). She attributes this to lack of sleep at night resulting from a breathing problem. (Id).

2

When questioned by her attorney, plaintiff agreed that she was diagnosed with a disk bulge at C/5-6, and a herniated disk at C6-7; which causes her terrible pain. (Tr. 540). Plaintiff was also diagnosed with a mass in her throat resulting from swelling in the hypo pharynx; a disk bultrusion in her lower back at L/3-L/4; fibromyalgia; and mild carpal tunnel syndrome. (Tr. 540-42). Plaintiff explained that, even on a good day, she experiences pain in her neck, and from her waist down, i.e. from her waist to the bottom of her buttocks. (Tr. 542-44). On bad days, she takes pain medication and stays in bed all day. (Tr. 544). On a scale of 1 to 10, with 10 being the most severe pain, plaintiff stated that if she moves the wrong way, the pain in her back is the equivalent of an 8 or 9; the pain in the back of her neck is an 8. (Tr. 545-46). Plaintiff takes Tylenol 3 and Effexor for pain. (Tr. 546). Plaintiff testified that she began taking medication for pain due to severe migraine headaches. (Tr. 546-47). Plaintiff also experiences pain in her right hand all of the time, and sometimes has trouble using her fingers to handle items. (Tr. 547). Plaintiff has been treated for depression, has difficulty concentrating or remembering things, and must sleep in a recliner due to an inability to breathe when lying prone. (Tr. 548-49).

Daughter's Testimony

Plaintiff's daughter, April Gibbons, testified that she visits plaintiff every day for at least one hour. (Tr. 551). She does all of the heavy cleaning, and on bad days, she also washes the dishes. (Tr. 552). According to Ms. Gibbons, plaintiff has a bad day 6 out of 7 days. (Id).

Vocational Expert's Testimony

The vocational expert, Bontiea Edgar, described plaintiff's past relevant work as a

3

telemarketer as semi skilled and sedentary; plaintiff's past work as a mental health worker was skilled and light; plaintiff's past work as a census taker as unskilled and light; and plaintiff's past work as a correction officer as semi skilled and light. (Tr. 556).

The ALJ then asked Ms. Edgar to assume a hypothetical individual of plaintiff's age, education and vocational experience who could lift 5 pounds, sit or stand for half an hour; walk a block; required to lie down 3 to 4 times a day for 1 to 2 hours; and should avoid fumes. (Tr. 556-57). Ms. Edgar opined that such an individual would not be able to perform plaintiff's past work, or any other work that existed in significant numbers. (Tr. 557).

Ms. Edgar assumed a second hypothetical person of plaintiff's age, education, and vocational experience who would have to avoid fumes and extreme cold; frequently or occasionally lift about 10 pounds; sit or stand for 1 hour before changing positions; sit or stand for 6 hours in an 8 hour workday; and walk for 6 minutes. (Id). Ms. Edgar opined that such an individual could perform sedentary work as it is done in the telemarketer position. (Id).

Ms. Edgar was asked to assume a hypothetical individual, who in addition to the second hypothetical, was limited as set out in a Medical Source Statement-Mental dated April 16, 2002. (Id). In this statement plaintiff was determined to be moderately limited in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; to set realistic goals. (Tr, 275-76). Ms. Edgar opined that such an individual could perform plaintiff's past work. Ms. Edgar defined "moderate" as an individual who has some difficulty, but can still function

4

satisfactorily; however, if the individual has difficulty up to 1/3 of the work day, then he or she could not perform plaintiff's past work. (Tr. 558).

Plaintiff's attorney asked Ms. Edgar to assume a hypothetical individual as posed in the second hypothetical, but with the limitations noted in a Medical Source Statement-Mental dated November 25, 2002. (Tr. 558). In this statement, plaintiff was found to be moderately limited in her ability to remember locations and work-like procedures; to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; and to respond appropriately to changes in the work setting. (Tr. 435-36). Plaintiff was found to be markedly limited in her ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 436). Ms. Edgar opined that such an individual could not perform plaintiff's past work due to her markedly limited ability to complete a normal work day. (Tr. 558).

### III.  Standard of Review

Review of a final decision of the Commissioner of Social Security is limited to determining if the decision is supported by substantial evidence on the record as a whole. Mussman v. Apfel, 17 F.Supp.2d 885, 890 (S.D.Iowa 1998). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Mussman, at 890. This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two

inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." Id. Consequently, even if the evidence may have been weighed differently, a reversal of the Secretary's decision is inappropriate when there is enough evidence in the record to support either outcome. Id.

**IV.    Analysis**

A five step sequential analysis is used to determine disability under the Act, which includes: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. Simmons v. Massanari, 264 F.3d 751, 754-55 (8th Cir. 2003).

Plaintiff contends that reversal of the ALJ's decision is warranted due to: (1) the ALJ's failure to find plaintiff's headaches to be a severe impairment; (2) the ALJ's failure to properly determine her RFC; (3) the ALJ's failure to evaluate plaintiff's obesity; and (4) the ALJ's improper finding that she could perform past relevant work as a telemarketer. In essence, plaintiff takes issue with the ALJ's findings as they pertain to steps two and four of the sequential analysis.

Severe Impairment

As to step two, "a 'not severe' finding is appropriate if the evidence fails to establish that an impairment or combination of impairments has more than a minimal effect on a claimant's ability to perform basic work-related activities." Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996).

In a questionnaire dated October 11, 2002, plaintiff indicated that she suffers from, *inter alia*, head pain, and that migraine headaches contributed to her inability to work. (Tr. 137-38). At the hearing, plaintiff testified to experiencing horrible migraine headaches (Tr. 546-47), she described experiencing pain that occurs between her ears and throat down to the back of her neck. (Tr. 545). Medical evidence supports her reports of pain. On September 24, 1999, Dr. Barbara Bumberry noted plaintiff had an ongoing problem with headaches that occurred daily, and that the medication prescribed, Celexa, did not relieve the pain. (Tr. 247). Dr. Bumberry also noted that plaintiff described the headaches as a steady ache that came up over the back of her head into the right side of her ear; and that there was a family history of headaches. (Tr. 247-48). Dr. Bumberry's impression included predominantly muscle contraction headaches, and added Neurontin to plaintiff's regimen. (Tr. 249). On April 4, 2001, the dosage of Neurontin was increased to 300 mg. in the morning and 600 mg. at bedtime. (Tr. 243).

Additional medical records also evidence continuing diagnoses of migraine headaches. During an examination on June 20, 2000, Dr. Anne E. Winkler noted that plaintiff was still having headaches (Tr. 173); on March 26, 2001, Dr. John Caster noted plaintiff's return for a follow up to her significant migraines (Tr. 219); and pursuant to an examination conducted on September 7, 2001, Dr. Mark J. Jarek, assessed plaintiff with migraines (Tr. 196).

Nevertheless, the ALJ simply concluded that although plaintiff experienced headaches, diagnostic tests supported the conclusion that they were secondary to her cervical pain. (Tr. 22). In

7

view of plaintiff's documented medical history, including her repeated complaints of headaches, the physicians' notes confirming the existence of migraines, and prescribed medication, the ALJ's determination that plaintiff's migraine headaches were not severe is not supported by substantial evidence on the record as a whole. cf. Johnston v. Apfel, 210 F.3d 870, 875 (8th Cir. 2000) (alleged impairments not severe when stabilized by treatment and otherwise generally unsupported by medical record).

Past Relevant Work

At step four of the sequential analysis, the ALJ found that plaintiff had the RFC to frequently and occasionally lift and carry up to 10 pounds; sit, stand, or walk up to 60 minutes without needing rest; sit, stand, or walk 6 hours during a normal 8 hour workday; perform only limited reaching overhead; and avoid fumes, chemical irritants, and extremely cold temperatures. (Tr. 24). The ALJ therefore, concluded that, based on plaintiff's RFC, she could perform her past relevant work as a telemarketer. (Id).

According to plaintiff, this finding is erroneous because: (1) the ALJ failed to utilize appropriate factors in assessing her credibility, and (2) the ALJ improperly assessed her RFC by failing to consider all of her impairments with the resulting limitations and comparing it to the job duties required in her past work.

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545; see also, Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Thus, in determining a claimant's RFC the ALJ must consider all of the relevant evidence including, medical records,

8

observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Pearsall, at 1217-18.

However, before determining a claimant's RFC, the claimant's credibility must be evaluated. Pearsall, at 1218. In undertaking a credibility analysis, the ALJ is required to consider prior work records; observations by third parties and physicians regarding disability; daily activities; the duration, frequency, and intensity of the condition; precipitating and aggravating factors; dosage, effectiveness, and side effects of medications; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

Plaintiff complains that the ALJ failed to consider all of the Polaski factors.[2] However, it has been held that a separate, detailed analysis of each factor is not required. Vonbusch v. Apfel, 132 F.Supp.2d 785 (D.Neb. 2001). Notwithstanding an arguable issue of mere opinion-writing deficiency, where an ALJ discredits a claimant's subjective allegations of pain, case law requires the ALJ to make an express credibility determination, acknowledge and consider the Polaski factors, and detail the reasons for discrediting the testimony by setting forth the inconsistencies between the claimant's subjective complaints and the record as a whole. Vonbusch v. Apfel, at 794. Here, the ALJ did not make an express credibility determination; but rather, simply noted plaintiff's last job as a telemarketer; her monthly allotment in food stamps, that the medication makes plaintiff feel poorly, and her prior interests and hobbies. The ALJ failed to state whether he found these factors

---

[2]Plaintiff's argument that the ALJ erred in finding that her failure to follow recommendations by Dr. Shah detracted from her credibility, is also misplaced. For, treatment by Dr. Shah was considered by a different ALJ in a prior decision dated September 6, 2001, in which plaintiff was found not disabled. (Tr. 37-43). Plaintiff's prior application was not re-opened or considered in the decision at bar. (Tr. 19).

9

either lent itself to or distracted from plaintiff's credibility. Consequently, he also failed to detail his reasons for discrediting plaintiff's testimony.

In large part, the only Polaski factor upon which the ALJ heavily relied were the medical records submitted regarding plaintiff's impairments. The record does not indicate, and plaintiff does not testify about her pain in reliance on the diagnosis of any particular treating physician. However, the record is replete with numerous treatments from various physicians. To that end, the ALJ found certain medical records, specifically plaintiff's subjective allegations of pain to be inconsistent with the examining and treating physicians who recommended participation in pain management, aerobic activity and exercise. (Tr. 21-22).

As to plaintiff's mental condition, the ALJ adopted the finding of Dr. Geoffrey Sutton, a psychologist acting as a state medical consultant. (Tr. 22). On February 15, 2002, Dr. Sutton completed a Psychiatric Review Technique form in which he indicated that plaintiff did not suffer from a severe mental impairment; however, he found that she suffered from affective disorders, anxiety related disorders, sleep disturbance, and depressed mood (Tr. 260, 263). He concluded that plaintiff suffered no limitations with difficulties maintaining social functioning, concentration, persistence or pace; and only mild limitations in the restriction of daily activities. (Tr. 270).

The ALJ gave Dr. Sutton's report greater weight because it was supported by references to reports by other examining sources. (Tr. 22). However, one of the examining sources noted in Dr. Sutton's report was the report authored by Clinical Psychiatrist, Dr. Joan Bender, who found that plaintiff suffered from "many health problems," including borderline lupus, osteoarthritis, disc problems, migraines, fibromyalgia, sleep apnea, and Graves' disease. (Tr. 258). Notwithstanding this finding, both the ALJ and Dr. Sutton relied on that part of Dr. Bender's assessment that if

plaintiff's pain symptoms improved, her mood would improve as well. (Tr. 22, 258, 272). Dr. Sutton and the ALJ also ignored that part of Dr. Bender's assessment in which she opined that although plaintiff appeared to be able to understand complex instructions, and was capable of concentrating on moderately complex tasks, when the effects of pain were considered, Dr. Bender opined that plaintiff would be limited to simple tasks only, and "there would be days she could not even do that." (Tr. 258).

Likewise, the ALJ chose to rely on a Mental-Medical Source Statement dated April 16, 2002, authored by Dr. Wickramasekera who found that plaintiff's mental based functional limitations were not severe. (Tr. 22, 275-76). Yet, the ALJ placed little weight on a subsequent evaluation dated November 25, 2002, in which Dr. Wickramasekera found that plaintiff was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 436).

Similarly, the ALJ dismissed the Mental-Medical Source Statement dated March 11, 2003, in which Dr. Wately found that plaintiff was markedly limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, maintain regular attendance, or sustain an ordinary routine without special supervision. (Tr. 509). Dr. Wately also found that plaintiff was markedly limited in her ability to work in proximity to others without being distracted by them, as well as in most areas involving social interaction and adaptation. (Tr. 510). Dr. Wately found plaintiff to be extremely limited in her ability to respond appropriately to changes in the work setting. (Id). In a Physical-Medical Source Statement, Dr. Wately noted that plaintiff suffered from

11

pain, and would need to lie down 4 times a day for an hour, and that the medication taken for pain "could easily distract her." (Tr. 513).

Even accepting only the sources relied on by the ALJ, it has been held that the ALJ may not discredit a claimant solely because subjective complaints are not fully supported by the objective medical evidence, rather the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. Brosnahan v. Barnhart, 336 F.3d 671, 677 (8th Cir. 2003); see also, Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000). In viewing the record at bar as a whole, plaintiff's subjective complaints, especially of the pain experienced in her head, neck, and back, are not inconsistent with the record as a whole. Here, the ALJ relied on the opinion of Dr. Sutton, a non-treating, non-examining physician, who reviewed the reports of the treating physicians to form an opinion of plaintiff's RFC; this did not satisfy the ALJ's duty to fully and fairly develop the record. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

The important issue is whether plaintiff has "the ability to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Forehand v. Barnhart, 364 F.3d 984 (8th Cir. 2004). The record at bar, taken as a whole, simply does not provide substantial evidence that plaintiff has such an ability in view of the numerous maladies experienced by her.

The ALJ also erred in failing to consider all of plaintiff's impairments, including the migraines and her obesity[3], in determining her RFC. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir.

---

[3] Plaintiff testified that she was 5'6" tall, and weighed 230 pounds, a weight gain of 30 pounds due to being sick and unable to exercise. (Tr. 532). Plaintiff claims, and defendant does not dispute that this corresponds to a Body Mass Index ("BMI") of 38. (Plaintiff's Brief: pg. 22-23). According to the National Institute of Health, a BMI of 30.0 or above is considered obese. Roberts v. Barnhart, 283 F.Supp.2d 1058, 1066 (S.D.Iowa 2003). In evaluating the RFC, the

12

2000) (" 'Residual functional capacity' is what the claimant is able to do despite limitations caused by *all* of the claimant's impairments.")

In addition to improperly assessing plaintiff's RFC, the ALJ failed to make express findings of the physical and mental demands of plaintiff's past work. In determining whether a claimant can perform his or her past relevant work, the ALJ is required to review the claimant's RFC and the physical and mental demands of the claimant's past work. Hedges v. Barnhart, 269 F.Supp.2d 1048, 1052 (W.D.Ark. 2003). This means that the ALJ is duty bound to investigate and make explicit findings as to the physical and mental demands of the claimant's past work and to compare that with what the claimant is capable of doing before a determination is made that she is able to perform her past relevant work. Hedges, at 1052. These findings require evidence of the "actual functional demands and job duties of a particular past job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Id. Here, the ALJ merely noted the vocational expert's testimony that plaintiff could perform her past relevant work as a telemarketer both as she performed it and as it is generally performed in the national economy. This was error, and upon remand, the ALJ should make express findings of the responsibilities involved in work as a telemarketer so that it can then be compared to a more realistic assessment of plaintiff's capabilities.

Accordingly, it is hereby

---

Social Security Rulings state that obesity can cause limitation on the ability to stand, walk, or lift; may affect the ability to manipulate hands and fingers; and may also lead to functional limitations which are not so obvious, such as the effects of sleep apnea which can lead to drowsiness and lack of mental clarity during the day. Roberts, at 1066.

13

ORDERED that plaintiff's request for judgment is GRANTED, and the decision of the Commissioner of Social Security is REVERSED. The above captioned case is REMANDED to the Commissioner for further consideration and any appropriate further proceedings in light of this opinion pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court is directed to enter judgment in favor of plaintiff.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 7, 2005

Kansas City, Missouri

14

Case 6:04-cv-03132-HFS   Document 11   Filed 09/07/05   Page 14 of 14